HORTENSE DORVALLE, Plff.,

*v.*

AMERICO MANCINI, Dft.

REINALDO PANIAGUA, Claimant.

---

San Juan, Law, No. 1120.

CLAIM FOR OPERA BOX RECEIPTS.

Contracts—Objects of Contract—Notarial Instrument.

1. The object of a contract must be definite and determinate, and the form of its execution cannot improve the quality of the contract itself, even if this form be a notarial instrument.

Contracts—Notarial Instrument—Delivery of Object.

2. Where a contract of sale is reduced to a public instrument before a notary public the execution thereof is equivalent to delivery, and where conflicting claims arise between different purchasers, the ownership shall be considered in him who first took possession in good faith.

Contracts—Third Parties—Apparent Ownership.

3. Where one leaves another in the apparent ownership of property, he will not be allowed to assert his right of ownership as against third parties without notice.

---

NOTE.—As to right of one leaving his chattels in another's possession to claim title against the latter's creditors, see note in 25 L.R.A. (N.S.) 760.

Dorvalle v. Mancini.

Contracts of Sale.

      4. In a contract of sale the thing sold must have an actual or potential existence.

Contracts—Parties—Agent.

      5. One party to a contract cannot act as the agent of the other as to the object of the contract.

Opinion filed June 20, 1916.

---

*Mr. H. G. Molina* attorney for plaintiff.

*Mr. T. D. Mott* attorney for claimant.

HAMILTON, Judge, delivered the following opinion:

The main suit was brought by a member of an opera troupe, who was discharged by defendant after her arrival in Porto Rico. The jury rendered a verdict for the plaintiff. When the suit was brought, the plaintiff sued out an attachment of certain scenery and of the box receipts at the Municipal Theater, San Juan. So far as relates to the box receipts, the attachment was served by the marshal's entering the box office at the theater and taking possession of all opera tickets. A theater employee sold at the window certain of these tickets. On the evening of the attachment, before much money had been taken in, however, the claimant made a bond and the marshal gave up possession of the box office. The plan of the marshal was to sell tickets and collect money for the evening in question and for each successive evening until he realized the amount of the claim. The bond given, however, took the place of the box receipts, and is to be treated as a substitute for them.

Dorvalle v. Mancini.

1. The claim of Paniagua is based upon a contract made by him and the defendant Mancini the 24th of December, 1915, executed before a notary at San Juan, but not recorded. The contract in question recites that Mancini proposed to bring to Porto Rico in February of the next year a grand opera company, composed of artists competent to sing various operas, and it being necessary for him to provide money therefor, the claimant Paniagua agreed to furnish it upon certain conditions. Thus Mancini for that purpose by this paper sells to Paniagua (1) "all right, title, and ownership which he can have now and in future in the product of the subscription which is to be opened for the term of the opera in Porto Rico during the period from February to April, 1915, and at the same time he sells, delivers, and alienates to Paniagua all his rights, titles, and interest which he can have now and in future in the product of the sales of entrance, boxes, house, gallery, upper gallery, and everything else, or what may be the product of the ticket office for the term of the opera; (2) the product of the ticket office should be delivered daily at 5 o'clock in the afternoon to Paniagua or his representative, and for the amount of the subscription Mancini will be the agent of Paniagua. Likewise the product of the ticket office will be delivered daily to Paniagua, and Mancini and also the person intrusted with these ticket office receipts will be the agents and trustee of Paniagua, in that behalf. (3) This contract will remain in force until Paniagua is reimbursed from the proceeds the amounts which he advanced to bring the company to Porto Rico plus $300 as a bonus." There were other provisions as to Venezuela, scenery, etc., which need not be considered.

The requisites of a contract are (1) the consent of the parties

### Dorvalle v. Mancini.

(2) "a definite object which may be the subject of the contract," and (3) a consideration. P. R. Civ. Code, § 1228. In the case at bar there is no question about the consent and the consideration. The matter of subject, however, must be further considered.

There is no doubt that "all things, even future ones, which are not out of the commerce of man, may be objects of contracts." P. R. Civ. Code, § 1238. The code says definitely that "nevertheless, no contract may be executed with regard to future inheritances, except those the object of which is to make a division *inter vivos* of the estate." Civ. Code, § 1238. The subject of the contract at bar is not "things or services which are impossible," and therefore not the object of a contract. Civ. Code, § 1239. There is no question that when the contract was made in December it was possible that the opera troupe might be brought to Porto Rico, and that subscriptions and tickets might produce money results. The more important question is as to the definiteness of the subject contracted about. "The object of every contract must be a thing determined with regard to its kind. The indetermination of the amount shall not be an obstacle to the existence of the contract, provided it may be possible to determine it without necessity of a new agreement between the contracting parties." Civ. Code, § 1240. The contract in question is indeterminate as to the amount of the advances to be made by Paniagua. No definite sum of money is mentioned, except $300 bonus. No specific number of artists to constitute the troupe is mentioned. Could Mancini, without more, have brought by steamer a troupe of any size which he pleased, commanding any prices that he thought proper, at Paniagua's expense, and without further agreement with Pani-

Dorvalle v. Mancini.

agua? This would seem to be preposterous, and the evidence tends to show that the parties consulted further from time to time.

It would seem very doubtful, therefore, whether as between the parties this contract could have been enforced at law. In such case it could not be enforced against a third party, and from the time of the levy of her attachment the plaintiff was such a third party. It is perfectly true that the contract was reduced to a public instrument, and that public instruments have a high rank under the civil law. But a contract which is indeterminate, that is to say, indefinite and not enforceable without a further contract, cannot be made more definite merely by its reduction to a public instrument. The form of its execution does not improve the quality of the contract itself. This is true, whether, since the adoption of registration set out in the Mortgage Law, a notarial instrument as such is or is not to be regarded as notice to third parties.

2. Supposing, however, the contract is not liable to this objection, what was its nature? Was it a sale, a loan, or a mortgage? It professes to be a sale of future box and ticket receipts. "By a contract of purchase and sale one of the contracting parties binds himself to deliver a specified thing and the other to pay a certain price therefor in money or in something representing the same." Civ. Code, § 1348. "The determination of the price can never be left to the judgment of one of the contracting parties." Civ. Code, § 1352. "The sale shall be perfected between vendor and vendee and shall be binding on both of them, if they have agreed upon the thing which is the object of the contract and upon the price, even when neither has been delivered." Civ. Code, § 1353. "A vendor is bound to deliver

and warrant the thing which is the object of the sale." Civ. Code, § 1364. In the case at bar the sale was made by a public instrument, and under § 1365 when a sale is made by means of such an instrument the execution shall be equivalent to the delivery of the thing which is the object of the contract. Here the question of conflicting claims occurs, one under an alleged sale and the other under an attachment levy, and under § 1376, "if the same thing should have been sold to different vendees, the ownership shall be transferred to the person who may have first taken possession thereof in good faith, if it should be personal property."

"The assignment of a credit, right, or action shall produce no effect against a third person but from the time the date is considered fixed" by a public instrument. Civ. Code, § 1429. "Public instruments are evidence, even against a third person, of the fact which gave rise to their execution and of the date of the latter." Civ. Code, § 1186.

The civil law in regard to matters not yet in existence is the same as the common law. Manresa makes clear the distinction between the sale of something real which is hoped for (*emptio rei speratæ*), whose quantity and quality are both uncertain, but will definitely come into existence, on the one hand, and, on the other, the sale of that which amounts merely to a hope (*emptio spei*), which it is not certain will ever come into existence much less its nature and quantity. 10 Commentaries, p. 28, 8 Commentaries, 684.

The facts of the case would tend to show, as already seen, that the contract in question is lacking in definiteness, and so does not amount to a sale. The most that can be claimed is that the

Dorvalle v. Mancini.

agreement amounted to a contract to do something in future, and was not a present sale of anything.

3. The theory of Paniagua's claim is perhaps that the contract was less a sale than a mortgage or pledge of the future theater receipts. This would stand a step below a chattel mortgage, and even a chattel mortgage does not exist in Porto Rico. Valdes v. Central Altagracia, 5 Porto Rico Fed. Rep. 156. Paniagua seeks, however, to have his claim rank with the principle of a pledge under Civil Code, § 1768, which is as follows: "The creditor must take care of the thing given in pledge with the diligence of a good father of a family; he has a right to recover the expenses incurred for its preservation and is liable for its loss or deterioration, in accordance with the provisions of this Code."

He contends—and in this departs entirely from the theory of his petition—that his box receipts agreement made up a new contract every day; that he received so much the first night, and found that unless he advanced something immediately the troupe would go to pieces and there would be no box receipts for the next night. He admits he actually received the amount of his claim before the attachment; but the advances he made were upon his theory for the common good of all concerned, and it would not be fair under that section to charge him up with all his receipts, and not to deduct the advances which he made for the common good. He cites also in this connection § 7 of the Civil Code of Porto Rico, which is as follows: "When there is no statute applicable to the case at issue, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in

·accepted and established usages and customs, shall be taken into consideration."

This view of the law is ingenious rather than convincing. It amounts to saying that a new contract was made every day; but, whatever its merits, this, at least, was not binding upon .third parties who knew nothing about it.  Taking this view of the case, it amounted to Paniagua's having continuous dealings with Mancini, and trusting to Mancini entirely.  Nothing was put of record, nothing was even put in a public deed, and so far as relates to third parties Mancini was left in possession and in apparent ownership.  It may be that Paniagua had the right to make such a contract with Mancini, but if so he took no security as against third parties, and cannot complain if the law steps in and gives a security to a more diligent creditor.  In fact, however, this kind of contract is not recognized by the civil or the common law as conferring any rights upon such a lender. He must protect himself by some security recognized by law, if he is to be protected at all.  This Paniagua did not do.

In point of fact, the original contract proved insufficient, and had to be supplemented by a private agreement, which was not reduced to a public instrument, and so not only was not binding upon a third party, but, by adding other provisions to the instrument which was executed, reduced the contract from its grade of public instrument to that of a private agreement.

4. An attachment is a forcible change of ownership and must be executed upon the same kind of property that would be the subject of voluntary contract.  In this case the attachment is not subject to the same infirmity as the contract between Mancini and Paniagua.  They were contracting in advance as to a species of property which had not come into being and might

Dorvalle v. Mancini.

never come into being. The thing sold must have an actual or potential existence at common law, and the civil law does not seem to be different. It must be specifically identified and capable of delivery in order to be the subject of sale. 2 Kents, Com. 468. A sale of fish to be caught does not pass the property in them when they have been caught. Low v. Pew, 108 Mass. 347, 11 Am. Rep. 357. An assignment of future wages is invalid where there is no existing contract of service. Mulhall v. Quinn, 1 Gray, 105, 61 Am. Dec. 414. Crops to be grown may be an exception. · Briggs v. United States, 143 U. S. 346, 36 L. ed. 180, 12 Sup. Ct. Rep. 391, but this subject is now fully covered by statute in Porto Rico, as well as in many of the United States. It is true that in the sale of a nonexistent chattel in which the seller has a potential interest, the sale is valid *in præsenti* to take effect *in futuro*. Thus a potential interest would include wool to be grown on a man's own sheep (Bouvier's Law Dict. s. v. Sale), but not that to be grown on another man's sheep, and surely not wool to be grown on sheep which did not exist. It cannot be said that the subject matter of this sale had at the time of the public contract a potential existence. If the contract concerns a mere possibility or expectation, the transaction will take effect if the seller ratifies the contract after the chattel has come into existence, or the buyer, with the seller's consent, gets possession thereof. Bouvier's Law. Dict. s. v. Sale. In the case at bar Paniagua did not go into possession of the box receipts. All he did was, as contemplated in the contract, to receive the money from Mancini after Mancini had collected it. It is true that Mancini in the contract is called the trustee or agent of Paniagua, but this he could not legally be. There would cease to be two parties to the contract,

Dorvalle v. Mancini.

and moreover a fraud would be committed on the public by leaving Mancini in the apparent artistic, managerial, and financial possession and control of the opera.

The levy by the marshal, however, was not upon any future box receipts. He went to the box office and by legal force possessed himself of the tickets and constituted the clerk at the window his agent to sell these tickets. He was, therefore, in actual as well as legal possession, and what he obtained and what he would have obtained, represented by the bond, was legally received and passed title to him. If Paniagua had had a contract which permitted him to go into the box office, and he had personally taken possession of the tickets and sold them, a different question would be presented. It suffices for the present purposes to say that this was not the contract, and this was not done by Paniagua, while this was done by the marshal as representing the plaintiff Dorvalle. The provision in Paniagua's contract that Mancini should be his agent and trustee for such purposes was invalid as against the plaintiff. One party to the contract cannot represent the other as to the subject matter of the contract. There would then cease to be two parties. The claim of Dorvalle, therefore, as actually enforced by attachment, stands in a different position from that of Paniagua, who relied upon a contract that would give him the receipts after they had been taken in.

5. Paniagua and Mancini had a contract, partially in writing and partially verbal, but it was not, from its character, record, or otherwise, brought home to the plaintiff as a third party before her attachment. Her attachment, therefore, was valid, and would take precedence over this contract of Paniagua

and Mancini, which for the purposes of this case must be held to have been binding, if at all, only between the parties.

It follows, therefore, that the attachment levy must be sustained as against Paniagua, and proper judgment will be entered against the makers of the bond to the amount of its face.

It is so ordered.